**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **No. 23-CR-000206 (ABJ)** |
| | ) | |
| **STEVEN GORHAM,** | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## MR. GORHAM'S MOTION FOR RELEASE FROM CUSTODY

Mr. Steven Gorham, through Undersigned Counsel, respectfully files this motion for release from custody pending his next trial pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987).

Section 3142(b) states that the Court "shall order the pretrial release of [Mr. Gorham] on personal recognizance . . . unless" there are absolutely no conditions of release that would ensure Mr. Gorham's appearance at court and the safety of the community. It is the government's burden to show either (1) by a preponderance of the evidence that Mr. Gorham is a risk of flight or (2) by clear and convincing evidence that no conditions can ensure the safety of the community. Mr. Gorham should be released because of the following: (1) his significant connections to this community; (2) his longstanding employment and demonstrated commitment to self-improvement; (3) the age of the allegations in this case and his performance on release prior to his arrest for the same, which demonstrate that he can succeed on release;  4) the fact that the trial in this case resulted in a hung jury on Monday April 8, 2024; and 5) the fact that he is still presumed innocent of this offense and has now been detained for nearly 10 months for this offense.

Before his arrest in this case on June 29, 2023, Mr. Gorham had maintained a fulltime

job at Nordstrom's Warehouse for over one and a half years, obtaining his forklift operation certification while there.[1] He had and still has a stable home with his wife in Greenbelt, Maryland to return to, a strong support network, and lifelong ties to the D.C. area.[2] While Mr. Gorham does have a criminal history, his AWIK conviction was from conduct that occurred 18 years ago in 2006, just after he turned 18 – for which he took prompt responsibility and served over 10 years in prison. While serving his prison sentence for that offense, Mr. Gorham demonstrated his commitment to turning his life around, obtaining his GED, completing UNICOR's Pre-Industrial Vocational Training, and completing various vocational certificate programs, including financial markets training, certified home inspection, and automotive systems technology training through the Vance-Granville Community College.[3] While Mr. Gorham was subsequently convicted of gun possession, that conviction is from over six years ago, in 2017, soon after his release when he had received credible threats of retaliation and violence from the family of the victim in the 2006 case. Since that time, Mr. Gorham has performed successfully on supervision and has made marked efforts to transform his life, to which numerous members of the community attested during the original detention hearings and litigation in this case.

Mr. Gorham asks that this Court find, as the underlying Magistrate Court did, that there are conditions that will reasonably ensure his appearance and ensure the safety of the community, and to release him under those conditions as he awaits retrial in this case.

## I.    Background

The Court is intimately familiar with the facts of this case.  In short, on October 7,

---

[1] *See* Ex. A, Resume of Mr. Gorham.
[2] *See* Ex. B, Letters of Support of Mr. Gorham.
[3] *See* Ex. A.

2022, Seventh District MPD officers were patrolling the area of the Woodland Terrace Public Housing complex, and observed a firearm in the pocket in front of the rear passenger seat in a car belonging to Mr. Gorham.

The DNA analysis subsequently conducted revealed that DNA belonging to Mr. Gorham as well as that of two individuals was present on the firearm. The DNA evidence further revealed that there was not a complete profile recovered from the swabs of the magazine. The Government's expert testified that she was only able to identify one of 25 possible alleles from the magazine DNA mixture. She further testified that while Mr. Gorham has that one allele, approximately 25-40% of the population also have that same allele, with 33% of the African American population possessing it.  No findings could be made from the swabs of the magazine of the firearm.

Mr. Gorham was not charged with any offenses that day. Instead, officers obtained a warrant to take a buccal swab sample from Mr. Gorham to accompany the firearm for DNA testing nearly a month after the incident. On June 29, 2023, over nine months after the firearm recovery, an arrest warrant was issued for Mr. Gorham pursuant to a one-count indictment charging Mr. Gorham with possession of a firearm by a person convicted of a crime punishable by one year or more in violation of 18 U.S.C. 922(g). Mr. Gorham pleaded not guilty.  Although Mr. Gorham was apparently under federal investigation during those nine months, the FBI task force found no additional suspicious information regarding Mr. Gorham.

On April 1, 2024, Mr. Gorham's case went to trial. On April 8, 2024, after two days of deliberation, the jury indicated that they were hung and the court declared a mistrial. The Government has indicated they intend to try this case again, with a trial date set for June 17, 2024. This motion follows.

## II.      Legal Standard

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(b) and (c)(1)(B).  The Supreme Court has explained:  "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *Salerno*, 481 U.S. at 755; *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose.").  "Nothing in this section shall be construed as modifying or limiting the presumption of innocence."  18 U.S.C. § 3142(j).  As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons."  *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.).  "It is only a 'limited group of offenders' who should be [detained] pending trial."  *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. N. 98-225 at 7 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3189).  Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant."  *Motamedi*, 767 F.2d at 1405.

It is the government's burden to demonstrate either by a preponderance of the evidence that the defendant is more likely than not to flee, or by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community.  *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.). Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has presented sufficient evidence that Mr. Gorham be detained: (1) the nature and

circumstances of the offense charged; (2) the weight of the evidence; (3) the history and

characteristics of the person charged; and (4) the nature and seriousness of the danger posed

by the person to any person in the community if he is released.  18 U.S.C. § 3142(g).

Mr. Gorham should be released.  The Bail Reform Act factors demonstrate that there

are conditions or combinations of conditions that can reasonably assure Mr. Gorham's

appearance at trial and protect the public.

**III.    The Government Cannot Meet Its Burden to Demonstrate that Mr. Gorham
         is a Flight Risk or Danger to the Community.**

The D.C. Circuit recently reiterated the clear and convincing standard that the

government must meet to justify detaining a defendant as a danger to the community:

> The crux of the constitutional justification for preventive
> detention under the Bail Reform Act is that '[w]hen the
> Government proves by clear and convincing evidence that *an*
> *arrestee presents an identified and articulable threat to an*
> *individual or the  community*, . . . a court may disable the arrestee
> from executing that threat        Therefore, to order a defendant
> preventatively detained,
> a court must identify an articulable threat posed by the defendant
> to an individual or the community.

*United States v. Munchel*, 991 F.3d 1273, 1282-83 (D.C. Cir. 2021) (quoting *Salerno*, 481

U.S. at 751) (emphasis added); *see also United States v. Patriarca*, 948 F.2d 789, 792 (1st

Cir. 1991) (explaining that the defendant must pose an actual danger to community, not that

the defendant in theory posed a danger to the community).  The government cannot meet its

burden here and Mr. Gorham should be released under conditions.  The Bail Reform Act

factors demonstrate that there are conditions or combinations of conditions that can

reasonably assure Mr. Gorham's appearance at trial and protect the public.

    A.    *The Nature and Circumstances of the Offense*

The Indictment charges Mr. Gorham with one offense: unlawful possession of a firearm

by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g).

However, the Indictment does not include any allegations of violence, carrying the firearm, pointing the firearm, use of the firearm, tossing the firearm, or any other behavior to support a finding by clear and convincing evidence that Mr. Gorham would be a danger to the community if released or that it is more likely than not Mr. Gorham will flee. The allegations that a gun was allegedly recovered from a locked, parked vehicle from the back passenger seat pocket of a vehicle registered to him is not clear and convincing evidence to justify his detention as a danger to the community.

## A.  *The Weight of the Evidence*

The weight of the evidence cannot be given undue consideration and is the least important factor for the Court to consider because Mr. Gorham is innocent until proven guilty, and too much consideration of the weight of the evidence flies in the face of that important constitutional protection. That critical principle notwithstanding, the weight of the evidence in this case also does not provide clear and convincing evidence that Mr. Gorham would be a danger to the community if released. "Even overwhelming evidence of guilt would not, alone, meet [the clear and convincing test]." *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018).

The weight of the evidence favors release.  The firearm was found in an unoccupied car.  While the car belonged to Mr. Gorham, the government elicited no evidence that Mr. Gorham was aware of the firearm and the gun was recovered inside the car in a place not obviously visible to the driver.  The DNA evidence is not conclusive as to possession.

## B.  *The History and Characteristics of Mr. Gorham*

Mr. Gorham's history and characteristics demonstrate that there are conditions of release that can reasonably assure his appearance and protect the community. Mr. Gorham has significant ties to this community, including his wife, mother, mother-in-law, four siblings, and numerous extended family members including uncles, aunts, and cousins. Mr. Gorham is also dedicated to developing a career and gaining useful job and life skills as, prior to his detention, he had maintained steady employment with Nordstrom Warehouse.[4] While working for Nordstrom, he began studying to obtain his CDL license, and has hopes of one day owning his own trucking business. As discussed in further detail below, he is not a flight risk, and he is not a danger to the community. By all accounts, he is succeeding in his current path, and detention at this point in his life would only serve as an unwarranted and unnecessary setback.

First, Mr. Gorham has strong ties to the community.  He has lived in Washington, D.C., and more recently the Maryland suburbs, his entire life.[5]  His mother, siblings, aunts, and uncles still live in D.C. Prior to his incarceration, Mr. Gorham lived in Greenbelt, Maryland in an apartment he shares with his wife and approved third party custodian, Samantha Pace-Gorham, where he would return upon release. By all accounts, Mr. Gorham is a loving and committed husband to his wife, Samantha Pace. Mr. Gorham has a stable home, a village of friends and loved ones, and extensive community support, as reflected in the numerous attached letters from family, friends, and non-profit and government members who know him well.[6] Mr. Gorham went to DC Public Schools, and has received healthcare and services in

---

[4] *See* Exhibit C, Paystubs from Nordstrom Warehouse reflecting a start date of October 13, 2021.
[5] *See* Exhibit B, Letters of Support.
[6] *Id.*

DC throughout his life.

Mr. Gorham has been on a positive trajectory since his release from prison, working and continuing to build professional skills towards realizing his goals. Since October 2021, Mr. Gorham had worked full-time as a warehouse associate at Nordstrom, Inc.[7] He had been promoted to forklift operator after obtaining his forklift certification through the company.[8] While he loved his job, he also aspires one day to own his own trucking company and has been studying for his CDL exam. Toward this end, in February 2023 he started his LLC called "GEETURBO LLC." He similarly demonstrated his commitment to change and self-improvement while serving his prison sentence for the 2006 offense. During his incarceration, he earned his GED; completed UNICOR's Pre-Industrial Vocational Training; and completed various vocational certificate programs, including financial markets training, certified home inspection, and automotive systems technology training through the Vance-Granville Community College.[9] It is Mr. Gorham's understanding that he would be permitted to return to work at Nordstrom if released.

Mr. Gorham also spends his free time mentoring young people, speaking about his experiences and encouraging them to pursue an honorable path outside the criminal legal system.[10] Indeed, Mr. Gorham serves as a mentor to his young 17-year-old cousin Jeremiah, whose powerful letter is attached. Jeremiah reportedly cried when he heard Steven had been incarcerated and had the following to say about Mr. Gorham and what his presence and incredible support has meant for his own life:

*My big cousin Steve is one of the most genuine people I know. I'm 17 but since I was*

---

[7] *See* Ex. C.
[8] *See* Ex. A, Resume of Steven Gorham
[9] *See* Ex. B.
[10] *See* e.g. Ex. B, p.5, letter of Naomi Watts.

*15 years old he has helped me in situations where nobody else would. He always looks out for me no matter what….Steve has been a mentor for me. When I was getting in trouble in school he would come get me and talk to me. He made sure I got to my football practices to make sure I focused on that instead of getting in trouble.…[H]e's always telling me to be better then the mistakes he has made in life.*

*He is my favorite cousin because when everyone gave up on me he didn't. He is always a phone call away. He makes sure im going to school and tells me that I can be great. He makes me feel like I can be great just based off the changes he made in his life. He was so proud of me when I made honor roll this semester. Sometimes hes the only one in the stands cheering me on at my games. I need his guidance. It has helped me through a lot of bad and sad times. He's the most genuine person I know and he makes all the difference in my life.*

*Ex.* B at p. 6.

In addition to serving this important role, Mr. Gorham also supports and cares for his mother, Ms. Juanita Gorham, who suffers from a number of medical conditions, including congenital heart failure, diabetes, and high blood pressure. Ms. Gorham indicates that Steven is her "caretaker," the person who transports her to emergency room visits and doctor appointments, and assists her with getting her medications, groceries and other necessities.[11] She fears her own health will worsen without his assistance and support.

  

**Steven & his mother**       **Steven with his uncles and cousins**       **Steven & his mother-in-law**

Indeed, in the short span that Mr. Gorham has been detained, a number of individuals

---

[11] *Id.* at p. 3.

have come forward attesting to the fact that he is an incredibly kind, supportive and highly motivated person dedicated to turning his life around. Monica Watts, Advisory Neighborhood Commissioner for Ward 8, who has known him since childhood and witnessed change for the better in the last several years, states in her enclosed letter that he is "helpful, kindhearted…[and] an amazing human being…who will continue to strive for greatness."[12] Commissioner Watts has also pre-connected Mr. Gorham to a mentorship group called Manpower, which he can participate in upon release.

Tom Brown, Executive Director of Training Grounds, a nonprofit that assists individuals with personal and career development, indicates that he has known Mr. Gorham for over a decade. He writes the following:

> *Before his recent arrest, [Mr. Gorham] expressed interest in our re-entry program, whereas he planned to receive training and assistance getting his CDL and entrepreneurship programs to assist with his up-and-coming business.*
>
> *I have come to know Mr. Gorham as an ambitious young man who embodies creativity and leadership. He is highly respected by those around him because of his warm personality and compassion for others. I have come to know Mr. Gorham as not only a team player, but a very respectful and resourceful young man. Steven always motivates others and is very focused on attaining a career to take care of his family and creating success in a legal way.*
>
> *Mr. Gorham transparently shared with me what led to his past shortfall of judgment and poor decision making. I thoroughly believe that he displays the proper attitude and leadership that our youth desperately need. Mr. Gorham has already taken leaps and bounds towards his own personal development by acknowledging his shortcomings and tapping into his support network to get the help that he needs and providing help to others in our various programs. Since his release, he has been on a very positive path, and I pray that he is given the opportunity to redeem his impactful position in the community while making healthy decisions.*

*Id.* at p. 2. These are powerful words from an individual who both knows Mr. Gorham well and has worked with community members for many years, and who also stands ready to

---

[12] *Id.* at p. 1.

continue to support Mr. Gorham upon release.

Mr. Gorham's wife, Samantha Pace-Gorham, has known him for many years, and has similarly witnessed him turn his life around in the time they have known each other, first as acquaintances, then friends, and now as a married couple. Ms. Pace-Gorham similarly attests that Steven has become "a great husband, friend, and son;…selfless, kind, and giving;… hardworking, protective and an excellent provider."[13] She further writes about how Steven has "changed his life for the better, often stating how grateful he is for his second chance in life."

 

**Steven & wife Samantha Pace-Gorham during marriage ceremony & at home**

As she testified during the detention hearing, Ms. Pace-Gorham was very much aware of his prior criminal cases, but has witnessed him change his life for the better in the years she has known him. In her attached letter, she also describes how he volunteers his time with the homeless, providing food and drinks, acknowledging that he easily could have been in the same position and in earnest effort to atone for the harm he has caused.

The fact that Mr. Gorham has managed to create such a strong support system, stable home, maintain steady employment, and be universally recognized as a caring person committed to turning his life around and atoning for his mistakes by all those who know him

---

[13] *Id.* at p. 5.

is a credit to his character and will. Mr. Gorham experienced many challenges as a child, but has clearly shown tremendous perseverance in building a better life, something he will continue to do upon release.

     While the government points to Mr. Gorham's criminal history, his DC Superior Court AWIK conviction occurred in 2006, 18 years ago when Mr. Gorham was barely 18 years old. Mr. Gorham took prompt responsibility and has regretted his conduct every day since. His other possessory gun conviction is from 2017, over six years ago. These convictions are not evidence of Mr. Gorham's current dangerousness. Instead, his current success at Nordstrom and clear commitment to his future, as evidenced by the numerous letters in support attached at Exhibit B, is the best evidence of Mr. Gorham's current characteristics. Since his release in the 2017 offense, Mr. Gorham has dedicated himself to rehabilitation and pursuing an honorable path, obtaining a fulltime job, marrying his longtime partner, building a stable home, and serving as a resource and source of support to youth and other individuals who are struggling—just as he has in the past.

     Furthermore, the PSA-approved third party custodian, Mr. Gorham's wife Samantha Pace-Taylor, is an appropriate custodian in this case. Ms. Pace-Gorham has worked for over ten years as a chief paralegal for a private law firm. While she does some tasks that require in-person work, she is generally able to work remotely and would seek to do so to the maximum extent possible if Mr. Gorham is released to her custody. Furthermore, she indicates she would be able to mirror Mr. Gorham's work schedule if he is permitted to work so that they would be home at the same time. To the extent the Court is concerned about unsupervised time at home, Ms. Pace- Gorham indicates that there are a number of other family members who would be willing to step up to be with Steven during those times, including his mother

and mother-in-law.

Lastly, as stated above, Mr. Gorham is innocent until proven guilty and detention is not necessary to ensure his appearance and protect the public.  Mr. Gorham's history and characteristics support release and indicate that a combination of conditions can protect the public and ensure his appearance at court.

     C.     *The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Gorham's Release*

The government has not and cannot provide clear and convincing evidence to support a finding that Mr. Gorham would be a danger to the community if released.  The dangerousness analysis "does not turn on any generalized, backward-looking assessment" of the offender or the crime. *Munchel*, 991 F.3d at 1286 (Katsas, J., concurring).  "Instead, it turns on a specific, forward looking assessment of whether" the individual "currently pose[s] an unmitigable threat to public safety." *Id.*

The government has not and cannot provide specific evidence to support a finding that Mr. Gorham poses an unmitigable threat to public safety. As stated above, the Government has not alleged that Mr. Gorham brandished a gun in this case or otherwise used the firearm recovered in the backseat passenger pocket of a vehicle. In the nine months between the firearm's recovery and Mr. Gorham's detention, he remained arrest free, maintaining his employment and engaging with mentorship programs. As he demonstrated during that time and before, Counsel is confident he will do everything in his power to comply with whatever conditions the Court imposes.

**IV.    Statistics Showing that It Is Extremely Rare for Defendants on Bond to Flee or Recidivate Demonstrate that Mr. Gorham Does Not Pose A Serious Risk of Flight or Danger to the Community.**

In this case, this Court should be guided by Administrative Office of the Courts

statistics showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and 98% did not commit new crimes on bond.[14]  Significantly, this near-perfect compliance rate is equally evident in federal districts with very high release rates and those with very low release rates.[15]  Even in districts that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and just over 2% are rearrested while released.[16]  The below chart reflects this data:





Federal Clients on Bond Rarely Flee or Recidivate (2019 Data)

---

[14] Ex. 1, AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[15] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019.  *See* Ex. 2, AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42.  The failure-to-appear and rearrest rates for these districts were calculated using Exhibit 1, AO Table H-15.  The districts with the lowest release rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands.  *See* Ex. 2.

[16] *See* Exs. 1 and 2.

Despite the statistically low risk of recidivism that defendants like Mr. Gorham pose, the government recommends detention in 71% of cases.[17]

Mr. Gorham must be released because the government has not presented evidence that shows that he would be among the approximately 2% of defendants who commit another crime while on pretrial release.

**V.      Mr. Gorham Must Be Released Because There Are Conditions That Will Reasonably Assure Appearance and Safety.**

Mr. Gorham must be released because there are conditions that will reasonably assure the safety of the community and Mr. Gorham's appearance in court. A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (quoting 18 U.S.C. § 3142(e)). Here, the government has not carried its high burden. Thus, Mr. Gorham cannot be detained.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Gorham's appearance in court and the safety of the community.

- Home detention with Ms. Pace-Gorham as third party custodian;

- GPS monitoring and/or the High Intensity Supervision Program;

- Continue fulltime employment at Nordstrom;

- Report on a "regular basis" to PTS or some other agency, *id*. § 3142(c)(1)(B)(vi);

- Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id*. § 3142(c)(1)(B)(viii);

- Participation in Manpower, mentorship group through Ward 8, if available;

---

[17] *See* Ex. 3, AO Table H-3 (September 30, 2021), *available at* https://www.uscourts.gov/sites/default/files/data_tables/jb_h3_0930.2021.pdf.

- Participation in Training Grounds support services as permitted when not working.

Because there are conditions of release that will reasonably assure Mr. Gorham's appearance in court and the safety of the community, he should be released.

**VI.     Conclusion**

For the foregoing reasons, Mr. Gorham respectfully requests that this Court release him with conditions.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____

Kathryn D'Adamo Guevara
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500